# Wallingford's Ex'r v. Wallingford's Adm'r et al.

(Decided Nov. 17, 1936.)

JAMES M. COLLINS, Jr., for appellant.

B. S. GRANNIS and J. M. McINTIRE for appellees.

OPINION OF THE COURT BY CREAL, COMMISSIONER— Affirming.

R. M. Wallingford died on December 3, 1934, and left surviving a widow, Maggie Knott Wallingford, and an adopted son, Walter Loetzer Wallingford, as his only heirs at law. The widow survived him only a few days, and at the December term of the Mason county court a paper purporting to be the last will and testament of R. M. Wallingford was duly admitted to probate as such. This writing at the beginning reads: "This is my desire and last will, all other cancelled. * * *"

He then provided that his wife should have all household goods, kitchen furniture, and all real estate in the city of Maysville north of Forest avenue to hold as long as she lived, and at her death all of said property to go to "The Childrens Home in Louisville, Ken-

tucky." It further provided that all real estate south of Forest avenue—house, lots and farm—all tools and livestock on the farm, should go to his adopted son and if at his death he had no children, the real estate to go to "The Childrens Home in Louisville, Kentucky." This instrument was in the handwriting of testator.

The adopted son was appointed administrator with the will annexed and, after duly qualifying, instituted an action in the Mason circuit court asking for a construction of the will and setting out in his petition the fact that there were 17 children's homes in Louisville, all of which were made parties defendant, and called upon to set up their claim under the will. Some of the institutions made parties defendant filed answer, and the court on final hearing held in effect that the clause "The Childrens Home in Louisville, Kentucky," was void and of no effect because so uncertain and indefinite that the court was unable to determine which of the 17 homes in Louisville was intended by the testator to be the beneficiary. It was further adjudged that the remainder interest, being undevised, passed to Walter Loetzer Wallingford as heir at law of the testator and that, the farm having been conveyed to him during the lifetime of the testator, he was the owner in fee simple thereof under the deed, and that his title thereto be quieted pursuant to the prayer of the petition.

For a number of years prior to his death, Mr. Wallingford had been a client of Mr. J. M. Collins, a prominent attorney at Maysville, and on October 28, 1918, he had his attorney prepare a will which he executed in strict compliance with the requirements of section 4828, Kentucky Statutes. After the usual formalities and provisions for the payment of his debts, he devised to his adopted son, Walter L. Wallingford, in fee simple, 40 acres of land which was conveyed to him by W. W. Ball and lying south of Forest avenue, provided devisee should assume and pay any debt that might be against same at the time of testator's death, and all the residue of his estate he devised and bequeathed to his wife, the personal property to be hers "absolutely and forever," but the real estate to be hers only for and during her natural life, and at her death to go and vest in the adopted son, should he survive her, for and during his natural life, and at his death, or at the death of his wife, should she survive him, the real estate should vest ab-

solutely and forever in any child or children of the adopted son that might survive him. The will further provided that, if the adopted son should die leaving no children or descendants surviving him, then at his death, or at the death of the wife of the testator, should she survive the adopted son, the real estate should vest in testator's executor in trust to be sold by him and the proceeds gathered into one fund which should be invested in good tillable farm land in Mason county to be used perpetually as a public charity for the use, comfort, and well-being of all deserving poor of the city of Maysville and Mason county, regardless of creed, color, or class.

Without going into detail, the will provided that deserving poor who should apply might be apportioned plats for purposes of cultivation and how the trust should be administered by the executor who would be trustee thereunder, and Mr. Collins was designated as executor and trustee in the will. This will was left with the attorney for safekeeping. Mr. Collins was absent from Maysville when the will dated March 6, 1926, was probated, and later upon his return to the city offered the other will for probate, and, upon refusal of the court to probate same, prosecuted an appeal to the circuit court by filing a certified copy of the order of the county court refusing the proffered probate and a statement of appeal and also a copy of the will.

In this statement the will which had been probated was attacked on grounds which it is unnecessary to enumerate, and it was alleged that the will dated October 18, 1918, was the true last will and testament of R. M. Wallingford and was entitled to probate.

Walter L. Wallingford filed a pleading styled answer in abatement, setting forth the provisions of the will which had been probated and his appointment as administrator with the will annexed, and alleged that under the terms of this will the will offered for probate by Mr. Collins had by express terms been canceled and revoked; that the later will made an entirely different disposition of the property from that made by the former will, and the testator by so doing intended to and did as a matter of law revoke and annul the earlier will. He pleaded the later will and the order probating same in bar and abatement of the right to probate the earlier one, and in an amended answer in abatement al-

leged that upon execution of the later will the testator executed in his own handwriting another paper reading:

"April 26, 1926.

"Mr. James Collins At—L

"Court Street, Maysville, Kentucky

"Friend James Collins, those papers you have in your possession being my will I have this day changed my mind and plans so on receipt of this notice you return same to Bank of Maysville or burn all papers.

"They are No—G.

"Yours truly,

"R. M. Wallingford."

This was inclosed in an envelope addressed as follows:

"James Collins At—L

"Court Street, Maysville, Kentucky."

Across the end were the words: "Deliv. this when I am no more."

And on the back the following: "Other papers at Bank of Maysville. I want to be given to Letz Wallingford."

He alleged that all these in the handwriting of testator were delivered to the Bank of Maysville inclosed in an envelope; that the force and effect of such paper was executory, and, being all in the handwriting of R. M. Wallingford, needed no attestation and operated as a revocation and direction to his agent J. M. Collins to destroy the earlier will held by him.

The court overruled a demurrer to the answer and amended answer and overruled a motion to set aside a judgment theretofore entered in the action asking for a construction of the will and for a judgment adjudging a remainder interest in the estate to go and vest in the executor of R. M. Wallingford under sections 4, 5, 6, and 7 of the earlier will bearing date October 28, 1918, and also a motion to reverse the judgment and order of the Mason county court refusing to probate same, and adjudged that the action of plaintiff (J. M. Collins) be dismissed. To all of which the latter objected and excepted and is prosecuting this appeal.

It is the contention of counsel for appellant that, when the two wills are considered together with the

letter set out in the pleading, it is apparent that it was the definite purpose of the testator to devise the remainder interest in his estate for charitable purposes and that he must have intended that the provisions of his first will be carried out, if for any reason there should be anything defective in the later will. It is further argued that the facts and circumstances revealed by the record bring this case within the doctrine of "dependent relative revocation," and numerous authorities are cited to support that contention, one of which is Schouler on Wills (6th Ed.) sec. 632. That section refers to an early leading English case where the testator prepared a second will and then canceled the first; but the second proved void for noncompliance with the statutory forms of execution, and the court held that the first will remained in force because the revoking act which depended upon the validity of the substituted paper never took effect. It is pointed out that the second will varied not materially from the first, merely making a change in the name of one of the trustees but no change in the disposition of the estate. It was further pointed out that later courts, while recognizing the same principle, had extended its operation much farther, and apparently in some instances defeating the testator's presumable preferences for the sake of establishing a permanent principle, which is stated to be:

"That where the cancelling or destroying his first will was made by the testator to depend upon the validity of his second will or substitute, and the second will or substitute cannot legally take effect, such cancelling or destroying fails to operate as such revocation, even though the revoking act per se would have sufficed."

The author, continuing, says:

"But this rule appears to be confined in modern practice to cases in which the testator evidently meant his revocation to depend upon the validity of the substituted will and where the two dispositions are closely connected, the one to make way for the other."

As stated in 28 R. C. L. p. 182:

"The doctrine is one of presumed intention and the theory is that the original disposition would not be revoked unless the new one could be given effect."

This doctrine was recognized and applied by this court in the recent case of Carpenter et al. v. Winn et al., 252 Ky. 543, 67 S. W. (2d) 688. In that case the testator made to his two sons specific bequests of $500, and a few days after the execution of the will summoned the draftsman who was also an attesting witness and informed him that he desired to raise the bequest to the two sons from $500 to $700, and in the presence of the witness struck out the word "five" and substituted the word "seven" in lieu thereof. It was held in effect that, conceding the alteration to be invalid, it did not amount to revocation of the will because of the lack of intention on the part of the testator that the will should be void in the event the raise was not effective. A discussion of the doctrine of revocation will be found in that opinion, and it is pointed out that, so far as cases in the United States are concerned, the controlling factor is the actual intent of the testator in each case.

Section 4833, Kentucky Statutes, provides that a will may be revoked:

"By a subsequent will or codicil, or by some writing declaring an intention to revoke the same, and executed in the manner in which a will is required to be executed."

Not only does the new will in express terms indicate a positive intention to revoke the old one, but, in making an entirely different disposition of the testator's estate, no room is left for the presumption or inference that the revocation was intended to depend upon whether the later will or any provisions thereof would be efficacious. If any doubt remained as to the correctness of this conclusion, it would be dispelled by the letter written by the testator to Mr. Collins at the time he executed the new will, in that he stated that he had changed his mind and emphasized his intention to revoke the former will in toto. Regardless of the principle contended for by appellant, a clause of revocation contained in a second will, properly executed by one of proper mental capacity, will operate and be given effect by courts, even though the second will should fail in its effect by reason of incapacity of a beneficiary named in it or any other matter dehors the will, as, for example, a devise of property to one person may be revoked by a devise thereof to another by a later will, even though the later devise cannot be given effect because the de-

visee cannot take thereunder. See Schouler on Wills (6th Ed.) sec. 635. It is indicated in that section that courts generally held such revocation to stand, if "it is not clear that the testator would not have preferred this revocation to his intestacy rather than the first devise and it should stand further because the will fails on the ground of matters outside of the instrument."

Viewing the record in the light of the authorities, the court would not be warranted in applying the doctrine contended for or granting the relief sought by appellant.

Judgment affirmed.